THE UNITED STATES ELECTRIC FIRE-ALARM COMPANY V. THE CITY OF BIG RAPIDS.

*Construction of contract—Sale of apparatus, etc., to be accepted if satisfactory—Cities and villages—Authority of alderman to waive provision of contract.*

Plaintiff made a written proposition to furnish defendant a fire-alarm bell, etc., in which it was stipulated that defendant should thoroughly test the working of the same within 30 days after the completion of the work, and, if found to be satisfactory, and according to contract, accept and pay for the same. A contract was thereafter made between the parties, of which the proposition was made a part, which provided that the defendant should have 30 days after the completion of the contract to test the bell and the working apparatus, and in case the same was satisfactory, as per contract, should pay for the same. The work was performed, and tested, and rejected by the defendant's common council, and in a suit upon the contract to recover the contract price it is held that the provision in the contract as to testing the work does not change the import of the like clause in the proposition, but that they must

be construed together, and that their reasonable construction is that the defendant was not obliged to accept and pay for said fire-alarm unless it was satisfactory to its common council, when tested.

Error to Mecosta.    (Palmer, J.)    Argued October 23, 1889.    Decided November 15, 1889.

*Assumpsit.*    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*M. Brown* and *Austin Herrick,* for appellant, contended:

1. It would be extremely unjust to the plaintiff to place a construction upon this agreement that would prevent it from recovering, when it has performed completely upon its part. It will be remembered that the defendant has never claimed that the plaintiff has not done as it agreed ·to do in the premises.    It simply claims that it has a right to say that the works put in by the plaintiff are not satisfactory to it.    The law upon this subject is stated in *Machine Co. v. Smith,* 50 Mich. 569, where the Court cite and adopt as the law applicable to this class of cases: *Daggett v. Johnson,* 49 Vt. 345; *Hartford Mfg. Co. v. Brush,* 43 Id. 528.

*Frank Dumon,* for defendant, contended:

1. Where a party fails to do what he contracts to do he cannot recover on his contract, whatever his intentions may have been; citing *Wildey v. School-dist.,* 25 Mich. 419; *Marlus v. Houck,* 39 Id. 431; *Smith v. Brady,* 17 N. Y. 173.

2. The fact that bells of the weight of the one in question are not manufactured of the tone mentioned in the agreement is not material; nor is it material that neither party knew of this fact at the time the agreement was made.    If a party binds himself to do that which may be deemed within the range of possibility, but which has never yet been done, and is not even known to be possible, he will be responsible in damages if he fails to perform his agreement; citing 3 Am. & Eng. Encycl. Law, 897; 2 Pars. Cont. (5th ed.) 673.

3. The consent of Alderman Comstock to a change in the contract, as to the tone of the bell, cannot aid plaintiff; no officer had any authority to change the provisions unless expressly authorized by the common council, which authority was never

given; citing *Bonesteel v. New York*, 22 N. Y. 162; *Hague v. Philadelphia*, 48 Penn. St. 527.

4. This case falls within that class where the right is reserved to the purchaser to determine whether he will accept and pay for the property, after he has seen it, and put it to a practical test; citing *Machine Co. v. Smith*, 50 Mich. 566; *Cole v. Homer*, 53 Id. 438; *Machine Works v. Lowell*, 62 Id. 546; *Mfg. Co. v. Ellis*, 68 Id. 101.

CHAMPLIN, J. This cause was tried before the court without a jury, who, on request of the parties, made a finding of facts and law, from which it appears that the city of Big Rapids has a volunteer fire department, consisting of six fire companies,—five hose companies, and one hook and ladder company,—and that the firemen who compose the various companies reside within a radius of three-fourths of a mile from the court-house in said city.

On June 6, 1887, the common council of the city of Big Rapids appointed a committee of five members of the council to consider the various propositions for a fire-alarm submitted to it, and those which should be submitted to them thereafter. On June 24, 1887, the United States Electric Fire-alarm Company of Evart, Michigan, submitted to said committee the following proposition in writing:

"OFFICE OF
UNITED STATES ELECTRIC FIRE-ALARM CO.
EVART, MICHIGAN, June 24, 1887.

"ALDERMAN COMSTOCK,
"Chairman Fire-alarm Committee,
"Big Rapids, Mich.

"*Dear Sir:* In case it is decided to use the court-house tower instead of building a bell tower, we will furnish the following proposition to erect a large fire-alarm bell, tower bell striker, alarm circuit, etc., as follows:

"One 3,000-pound bell and hangers, one medium sized tower bell striker for electrically striking the alarm and location of fires on the bell, and to be operated and con-

trolled from the water-works pump house; the bell and striker to be placed in the court-house tower, and one manual repeater located at the water-works pump house for automatically operating the tower bell striker, and capable of repeating the number of any one of 30 different fire-alarm boxes, as may be desired, together with all the poles, wires, insulators, brackets, battery, etc., necessary for constructing line and electrical alarm circuit, connecting repeater at water-works with tower bell striker in the tower; said poles to be good sound cedar, of sufficient length to carry the line over all other electrical wires now erected; the line to be of the very best quality of No. 12 galvanized telegraph wire, well insulated on good glass insulators, secured to the poles, and all joints well soldered; also all the necessary battery and minor attachments for the successful operation of the same,— all complete and ready for service for the sum of $1,248. It being indefinite as to the actual weight of a bell, although intended to be cast of a given weight, it is proposed to make an addition or reduction in the price given at the rate of $16\frac{1}{2}$ cents per pound, according to the variation of the weight of the bell from the proposed weight.

" The company agrees to do all of the above work, and complete the contract in about 30 days from the date of signing the contract, and your honorable body shall thoroughly test the working of the same within 30 days after the completion of said work, and if found to be satisfactory, and according to contract, accept and pay for same.

"In case the manual repeater is left from the list of apparatus and a signal key used, the above figures will be reduced to $1,148.

" It is further proposed that in case a 2,500-pound bell is used the above figures will be reduced to $1,063. The bell foundry guarantee all bells, and we guarantee all of our machinery as to perfection of operation, and against breakage caused by flaws or defects in castings.

" All of which is respectfully submitted.

"UNITED STATES ELECTRIC FIRE-ALARM CO.,
"S. A. Chase, Sec'y."

Alderman Comstock, one of the committee, afterwards reported to a meeting of the common council on July 5, 1887, that the committee had negotiated for a fire-alarm

with a 3,000-pound bell, and asked the council to settle on some location for it to be placed. Such report was received and the committee discharged, and the following record thereof was entered upon the journal of the common council, to wit:

"Alderman Comstock, chairman of the special committee appointed to purchase a fire-alarm, reported that they had negotiated for an alarm with a 3,000-pound bell, and asked the council to settle upon some location for it to be placed. Report adopted, and committee discharged."

On July 23, 1887, the city of Big Rapids entered into a contract in writing with the plaintiff in this suit, which said contract was signed by the mayor in behalf of the city, and by the United States Electric Fire-alarm Company, by S. A. Chase, its secretary. The aforesaid proposition made by the United States Electric Fire-alarm Company was attached to said written contract, and became and was a part thereof, and in addition thereto the contract contained the following, that is to say:

"It is hereby agreed between the city of Big Rapids of the one part, and the United States Electric Fire-alarm Company of the other part, as follows:

"The said second party hereby agrees to put in a fire-alarm bell in court-house tower, to do all work and furnish all material and things used in connection therewith, as specified in specifications hereto attached, consisting of four sheets; and same are declared to be and are a part of this contract.

"Said second party agrees to set poles at such distance apart as to support wire in a good and substantial manner, and to set same of sufficient depth to stand in proper manner; poles to be set in streets and alleys to points hereinafter named at intersection of Grand Traverse and Warren avenue, unless permission is granted to set them on private property, or to cross same with wire. One pole to be set at intersection of Grand Traverse street with Warren avenue; thence along Warren avenue

to Hemlock street; thence along Hemlock street to River street; thence along River street to Maple street; thence across Maple street to alley between Stewart and Ives avenue; thence southerly along to Elm street; thence to court-house tower.

" All work to be done in a good and workman-like manner, and work done and contract to be performed within 40 days from the date hereof. The tone of bell to be second A below middle C on the organ. Said first party to have 30 days after contract is completed to test bell and working apparatus, and, in case same is satisfactory as per contract, then they agree to pay said second party the sum of $1,248 therefor, or as per specifications as to weight, &c. Said first party agrees to furnish and put in ceiling and floor in tower."

In pursuance of said contract plaintiff put in for the defendant a fire-alarm, including a bell weighing 3,206 pounds, and the total amount of the plaintiff's demand against the city for the fire-alarm system, including the bell, is $1,294.99. The bell was put in the court-house tower, and the tone of the bell is about E flat.

On September 24, 1887, plaintiff notified the common council that the system put in by it was complete, and requested the council to fix a time when they would test the same, and the council fixed October 1, 1887, at 9:30 o'clock A. M. as the time when such test would be made. The common council assembled accordingly for the purpose of testing the fire-alarm, and the plaintiff, by its secretary, S. A. Chase, made a thorough test of the working of said fire-alarm system, and the tone and volume of sound of said fire-alarm bell then in the court-house tower. The members of the council also tested the tone and volume of the bell from the different fire-alarm boxes. Another test of the fire-alarm was afterwards made in the night-time, by turning in an alarm from one of the boxes, said council being then in session in their council chamber, and listening thereto. A still

further test was made on October 9, 1887, it being on the occasion of a fire in the city.

On October 10, 1887, the council considered the question whether the said fire-alarm system and said fire-alarm bell were satisfactory to said common council, and whether said common council should accept and pay for the same, and took action thereon, and then and there considered that said fire-alarm system and bell were not satisfactory to said common council, and they refused to accept the same, or any part thereof, for and in behalf of the city, and they then and there caused a record of their determination to not accept the same, and directed the recorder of the city to notify the plaintiff of such action. The recorder sent to the plaintiff by mail the notice following:

"BIG RAPIDS, October 13, 1887.
"ELECTRIC FIRE-ALARM CO.,
"Evart, Mich.
"*Gentlemen:* At a meeting of the common council last Monday night they rejected the fire-alarm bell as not satisfactory. Yours, etc.,
"S. A. STAMBAUGH, Recorder."

The notice was received by the secretary of the company on October 15, 1887, at Evart, Michigan, and on the seventeenth of the same month. the common council adopted the following resolution:

"Whereas, the city of Big Rapids has made a contract with the Electric Fire-alarm Company of Evart, Michigan, the condition of such contract being that said fire-alarm company furnish a bell weighing 3,000 pounds, and all apparatus for striking the same, material and work to be satisfactory to the city: *Therefore, resolved,* by the common council of the city of Big Rapids, that the tests of the same have not been satisfactory; and it is further *resolved* that we do not accept the same, as it is not satisfactory according to contract."

The common council of the city has never in fact

accepted said fire-alarm system, and said fire-alarm bell which is a part thereof, and the city has not used the same for any purpose whatever. The fire-alarm bell is not suitable for the purpose of a fire-alarm for the reason that its tone and volume of sound is such that said bell cannot be heard easily by the firemen when within their houses or places of business, or when engaged in anything demanding their attention in any part of the city.

The court further found that the bell put up by the plaintiff was the exact kind of a bell contracted for by the defendant, except as to the tone thereof; that the fire-alarm system furnished by the plaintiff for the defendant, and all work done by it in putting up said fire-alarm system, and the materials furnished therefor, were furnished and done in accordance with the terms of said agreement, except the tone of the bell, which was about E flat, instead of second A below the middle C on the organ; that defendant never objected to the bell on account of the difference in tone; that the bell was properly manufactured, was of the best bell metal, had been properly tested by competent experts before it was put up by the plaintiff, and was in every respect a first-class bell; that bells of the weight of the one in question are not manufactured of the tone mentioned in said agreement, but neither one of the parties knew this fact at the time said agreement was made; that as soon as the plaintiff found it out he notified said C. W. Comstock, who was the chairman of the committee on water-works of the common council, which said committee had in charge the matter of said fire-alarm system, and who, upon receiving said notice, notified the plaintiff to do the best it could in regard to the tone of the bell, which it did.

The circuit judge also found that the common council, acting in good faith, made a thorough and fair test of the working of said fire-alarm, and that they refused to

accept the same in behalf of the city in good faith, and for the reason that the same was not suited to the needs of the city, and was of no practical utility as a fire-alarm. He also found that the agreement above set out was the only agreement between the parties in respect to the premises.

As a conclusion of law he found that the plaintiff had not made out by its proofs such a case as would entitle it to a judgment in any amount whatever against the defendant.

The plaintiff failed to show a substantial compliance with that portion of the contract which stipulated that the tone of the bell should be second A below middle C on the organ. We do not think that the defendant waived this provision of the agreement by the fact that bells of 3,000 pounds' weight are not manufactured having such tone, and that Mr. Comstock, when notified of that fact, told plaintiff to do the best he could with regard to the tone of the bell. The fact is not found that Mr. Comstock had any authority to make any changes in the contract, and the records of the proceedings show that when the committee reported the proposition made by plaintiff to the common council they were discharged.

Counsel for plaintiff make no claim in this case under the common counts in *assumpsit*. They claim to recover upon the sole ground that the difference in the tone of the bell was waived, and that in all other respects plaintiff has fully performed its contract, and the defendant has refused to accept, and pay the contract price. While admitting that the rights of the parties depend upon the construction of the contract, they insist that the defendant did not have the arbitrary power to refuse to accept the work done, and materials furnished, notwithstanding the plaintiff had performed in every particular; that, if

the plaintiff performed the agreement on its part, the defendant was bound to accept and pay. They admit that the defendant had the right to test the property for the purpose of ascertaining whether it was according to contract, and if it was it was bound to be satisfied, and was legally liable to pay the contract price.

The particular clauses of the contract to be construed read as follows:

" The company agrees to do all of the above work and complete the contract in about 30 days from the date of signing the contract, and your honorable body shall thoroughly test the working of the same within 30 days after the completion of said work, and, if found to be satisfactory, and according to contract, accept and pay for same."

This language is contained in the written proposition made by the plaintiff to defendant. The written contract executed by the parties contained this clause, namely:

"Said first party to have 30 days after contract is completed to test bell and working apparatus, and in case same is satisfactory, as per contract, then they agree to pay," etc.

The proposition of the plaintiff was attached to and made a part of the contract between the parties, and consequently these clauses must be construed together. The language employed by the plaintiff in making the proposition clearly indicates that the council was not obliged to accept unless the work was done according to contract, and was also satisfactory, and this is a reasonable construction of the contract. The council were acting in a representative capacity, and in the interest of the public. The contract involved a change in their system, and was to them in the nature of an experiment. What they required was efficiency in the system which they were about to adopt, which, while it might operate well under a paid fire department, should be adapted to

the workings of a volunteer fire department, the members of which are in general following their usual avocations, and volunteer their services upon an alarm of fire. It would appear that the alarm should be such that the members would hear it while about their business in their shops and counting rooms, as well as when in their houses at night.

The council had a right, not only to test the workings of the system to ascertain whether it was according to contract, but to satisfy themselves if the system furnished an alarm sufficient for the purpose for which they designed to employ it. The clause last cited from the written contract does not change the import of the clause above quoted from the plaintiff's proposition. They must be construed together, and the reasonable construction of them is that the city of Big Rapids was not obliged to accept and pay for the fire-alarm furnished by the plaintiff, unless it was satisfactory to its common council when tested. *Walter A. Wood, etc., Machine Co. v. Smith*, 50 Mich. 565 (15 N. W. Rep. 906); *Mansfield Machine Works v. Lowell*, 62 Id. 546 (29 N. W. Rep. 105); *Plano Mfg. Co. v. Ellis*, 68 Id. 101 (35 N. W. Rep. 841).

The judgment of the circuit court is affirmed.

The other Justices concurred.